NATHANIEL SOPER & al. versus INHABITANTS OF SCHOOL
DISTRICT NO 9, IN LIVERMORE.

It is not necessary to the validity of a warrant from the selectmen to call
a school district meeting, that the application therefor should be recorded,
or produced, or that the fact that a proper application had been made,
should be recited in the warrant. It is sufficient, if it appears by parol evi-
dence, that such application had been made.

Where it was proved, that there was no school house in the school district,
a return upon the warrant from the selectmen to call the meeting, made by
the person to whom it was directed, that he had notified, &c., "by post-
ing up four copies of this warrant, one on the sign post at the confluence
of the B. and F. roads, one on the corner of the blacksmith's shop, one
on the Methodist meeting house, and one in the post-office, all of which
places are in said district," — was holden to furnish sufficient evidence,
that the notices were posted, as to place, in the manner required by Rev.
Stat. c. 17, § 24.

In the proceedings of our numerous and various municipal corporations, a
scrupulous observance of the most approved formalities is not to be expect-
ed. If, therefore, the intention of the voters of a school district, to raise
a sum of money for the purpose of building a district school house, is per-
fectly apparent upon their records, it is sufficient to authorize the assess-
ment and collection of the amount, although such intention may be very
informally expressed.

THE parties agreed to submit this action to the decision of
the Court, upon the following statement of facts,

"This is an action of assumpsit for money had and received,
brought to recover the amount of a school district tax assessed
against the plaintiffs, including the costs upon a sale of the
plaintiffs' property, taken and sold to pay said tax, by the col-
lector of said town, under the warrant of the assessors, amount-
ing in the whole to the sum of fifteen dollars and sixty cents.

"It is agreed by the parties aforesaid, that the school house in
said district, was consumed by fire in the winter of 1845; that
the selectmen of said town, on the 30th day of April, 1845,
upon the written request of three or more of the legal voters
in said district, (a fact agreed upon only on condition that
parol evidence may be offered to prove that such written ap-
plication was made, or by the production of such original

application) issued their warrant in the words following, to wit : —

"To Isaac S. Daley, one of the inhabitants of school district No. 9, in the town of Livermore. "GREETING.

"You are hereby required in the name of the State of Maine; to notify the inhabitants of said district, qualified to vote in town affairs, to meet at the dwellinghouse of John H. Bigelow in said district, on Saturday the tenth day of May next, at one o'clock in the afternoon, to act on the following articles, to wit : —

"1st. To choose a moderator to regulate said meeting.

"2d. To choose a clerk for said district.

"3d. To see if the district will vote to build a school house in said district.

"4th. To see if the district will choose a committee to superintend the building of said house, or act any thing relating thereto.

"5th. To see if the district will vote to raise money to defray the expense of building said house, or act any thing in relation thereto.

"Given under our hands at Livermore, this thirteenth day of April, in the year of our Lord, one thousand eight hundred and forty-five. "Hezekiah Atwood, ⎫ Selectmen
"Josiah Hobbs, ⎬ of
"Silvester Norton, ⎭ Livermore."

"Said warrant was returned at said time and place of meeting, with the following service indorsed thereon. "Pursuant to the within warrant, I have warned and notified the inhabitants of school district number nine, as within directed, by posting upon the third day of May instant, four copies of this warrant, one on the sign post at the confluence of the Brittuns and Farmington roads, one on the corner of the blacksmith's shop, one on the methodist meeting house, and one in the post-office at Livermore centre, all of which places are in said district. May 10th, 1845. Isaac S. Daley."

"The inhabitants of said district met agreeably to the foregoing warrant. The meeting was called to order by John A.

Hayes, clerk of the district, Capt. John Strickland, chosen moderator, and sworn by Isaac S. Daley, Esq.

2d.   " Chose John A. Hayes clerk for the district, who was sworn into office by the moderator.

3d.   " Voted to build a school house.

4th.   " Voted to choose a committee to superintend the building the house.

5th.   " Voted that this committee consist of three.

6th.   " Chose Isaac S. Daley, John Strickland and Joel H. Bigelow, the forenamed Committee.

7th.   " Voted that the building committee be instructed to ascertain the spot where the school house is to be built according to the vote of the district in which it located the house, and also to draft a plan of a house, and ascertain the probable sum of money that such a house can be built for, and report progress at the adjournment of this meeting, and also for what the spot where the house is to be built, can be purchased for; and shall have the general supervision of things incident to the building of said house.

8th.   " Voted that the district raise a sufficient sum of money, to defray all the expenses incident to the building of said house.

9th.   " Voted that when we adjourn, that we adjourn to the thirty-first day of May instant, at four o'clock in the afternoon, at this place.

" The district again met at said time and place of adjournment, and the building committee made their report as to the location of the house, having measured the distances from the two extremes of the district, north and south to the centre, as directed, which report was accepted.   Also voted that the building the school house in two jobs, the wood work in one and' the stone and mason work in the other, be sold to the lowest bidder, upon the plan as presented by J. S. Daley, on Saturday the seventh day of June next, at four o'clock, P. M., on the spot selected by the committee for building of said house. This meeting was adjourned to the seventh day of June aforesaid, at four o'clock, P. M. on the spot selected by the committee for building the school house.

" The district met agreeably to adjournment. The moderator being absent, Isaac S. Daley was chosen moderator pro tem. who was sworn by the clerk.

" Proceeded to business, as per vote of last meeting. After consultation, voted not to have a basement story to the house, as suggested by the committee at the previous meeting. At the meeting, the building of the wood work was sold to John W. Bigelow, for one hundred and forty dollars, on condition that it should be built in a particular manner set forth, and the stone and mason work were sold to Charles Wyer for forty-six dollars and fifty cents. [Here the mode of building was stated.]

" This meeting was then adjourned to the first Monday in November next, at six o'clock, P. M., at the dwellinghouse of J. W. Bigelow, in said district.

" The district met agreeably to adjournment and the building committee reported progress, which was accepted, and the meeting further adjourned to the twenty-fourth day of November instant, at the school house now building in said district. November 24th, 1845. District again met, agreeably to adjournment, and the committee reported the house was not completed, and the meeting was further adjourned to the eighth day of December, then next, at six o'clock, P. M. at the same place.

" December 8th, 1845. The district met agreeably to adjournment, and proceeded to business as follows : —

" *First*, heard the report of the committee, which was as follows : — Your committee to whom was assigned the duty of ascertaining the place where the school house was to be located by measuring from the extremes of the district to the centre, and ascertain what sum the land for the location of the school house could be obtained for ; also to sell the building of said school house and superintend its construction, have attended to their duty, and ask leave to report, that they have endeavored to be faithful in the performance of their trust. The mason and stone work was done by Charles Wyer, which in our opinion was well done, and accepted by your committee. The wood work has been done by Mr. Nathaniel Bartlett, who,

though extremely tardy in the performance of his labor, has in our opinion, at last, got a good house as a whole — he has been faithful in putting the work together, so that the house has met the unanimous approval of your committee.

## BILL OF EXPENSES.

| | | |
|---|---:|---:|
| To Charles Wyer, | $ 46 | 50 |
| To John W. Bigelow, | 140 | 00 |
| To John A. Hayes, for stove and funnel, | 15 | 38 |
| To John W. Bigelow, for removing the remains of the old school house and leveling the door yard, and banking the new house, agreeably to contract with Joel H. Bigelow, for site, which has been verbally reported at a previous meeting, | 4 | 00 |
| To Isaac S. Daley, for services, | 4 | 00 |
| To John Strickland,      " | 1 | 00 |
| To Joel H. Bigelow,      " | 1 | 00 |
| In addition to which your committee have taken the liberty to have the plastering each side of the chimney smoothed and painted for a black board, which additional expense is | 1 | 50 |
| | $213 | 38 |

" December 8th, 1845.

" Isaac S. Daley,
" John Strickland,   } Committee."
" Joel H. Bigelow,

" Which report was then and there accepted by a vote of the district and recorded by the clerk with the doings of this meeting, and the meeting adjourned without day.

" By reason of the aforesaid proceedings at said district meeting within forty-eight hours from the adjournment aforesaid, the clerk of the district made out and delivered to Hezekiah Atwood, chairman of the board of assessors in Livermore, his certificate in the words and figures following, to wit: —

" At a legal meeting in school district number nine, in the town of Livermore, called for the purpose of locating and building a school house in said district, voted to raise a sum of

money sufficient to defray the expenses of said house, which are $213,38.

"Livermore, December 8th, 1845.

"John A. Hayes, Clerk of said District."

"Within thirty days from the time aforesaid the assessors of Livermore apportioned and assessed said sum of $213,38, with an overlay of about ten dollars, upon the polls and estates in said district, and made out lists thereof together with their warrant in due form of law, commanding and directing the collector of said town to collect and pay over the same to Benjamin Bradford, Treasurer of Livermore, which tax bills and warrant were delivered to Ulmer Perley, collector of Livermore, who, upon the refusal of the plaintiffs to pay their proportion of said assessment, distrained their property and sold it by virtue of, and as commanded in said warrant, to satisfy the plaintiffs' tax aforesaid, which (including costs of sale) amounted to $15,60, and the whole amount of taxes in the bills committed to said collector as aforesaid have been by him collected and paid over to said town treasurer, and drawn out upon the orders of said building committee, to pay the expenses of building said house and assessment and collection of said tax.

"Upon the foregoing statement of facts the parties agree that such judgment may be entered up, upon nonsuit or default, as law requires.

"Seth May, Attorney to Plaintiffs.

"Ruel Washburn, Attorney to Defendants."

*S. May,* argued for the plaintiffs, and among other things, said, that the plaintiffs claimed to recover back the amount of the money paid, on the ground that the tax was not legally assessed, and that therefore their property was illegally taken and sold.

The school district had received the money, and the action was rightly brought against the district. Rev. Stat. amendment, page 748.

We contend that the tax was illegal, because there is no legal evidence that any written application of any three or more of the legal voters of said district was made to the selectmen to call the meeting, as required by Rev. St. c. 17, § 23.

*Soper v. Livermore.*

The legislature, by requiring the application to be in writing, must have intended that it should be matter of record. And this fact should have been recited in the warrant. Parol evidence to prove such application is, therefore, inadmissible. And public policy requires that such should be the rule. This question was raised in Massachusetts, but left undecided. *Williams* v. *Sch. Dist. in Lunenburg*, 21 Pick. 75.

The meeting was illegal, because the inhabitants of the district were not legally notified. Several particulars were pointed out, and 21 Pick. 82, and 20 Maine R. 439, were cited.

But the principal objection, on which we rely to show that the tax was illegal, is found in the doings of the meeting, rather than in any of the preliminary steps leading to it. No sum of money was voted to be raised at the meeting. Here the proceedings at each meeting were examined, and it was insisted, that neither at the first meeting nor at any adjournment thereof was there any vote passed to raise the money. The certificate of the clerk was therefore wholly unauthorised and void. The most favorable position for the defendants is, that the vote was to raise enough money to build the school house, without stating any sum; and that is wholly insufficient. The allowance of bills to a certain amount, seven months afterwards, cannot enlarge or alter the vote to raise money. Would the vote of a town to raise money sufficient to defray the expenses of the poor be an authority to raise money? The clerk of the district should have been able to certify the vote to raise money, when it passed, and not from what took place months afterwards.

*Codman* and *Washburn*, for the defendants, contended that it was not essential to the validity of a school district meeting that any written application should be made to the selectmen to call it. The application is only to render it imperative on them to call a meeting, but they may do it without the application of any member. The presumption of law is, that the selectmen had the written request to grant the warrant. 7 Pick. 112; 3 Greenl. 390; 4 Pick. 258; 3 Pick. 282.

If necessary, we say that parol proof is admissible to show, that a written application was made to the selectmen to call the meeting. 21 Pick. 80.

The return of the warrant shows, that legal notice was given. *Fletcher* v. *Lincolnville*, 20 Maine R. 439 ; 1 Pick. 112 ; 24 Pick. 122 ; 5 Metc. 287.

We contend that at the school district meeting such a legal vote to raise money for the purposes specified in the warrant was regularly passed and such proceedings had, as authorised the assessment and collection of the tax. The money was duly, regularly and legally raised, assessed and collected under the provisions of Rev. St. c. 17, § 28. The counsel examined the proceedings of the district, and insisted that there could be no possible reason, in law, equity or good conscience, urged to justify the recovery of this money back by the plaintiffs, which as good citizens they ought voluntarily to have paid ; and that it would be a reproach to the law and a stigma upon justice, if the plaintiffs can be suffered to prevail.

The opinion of the Court, SHEPLEY, J. being absent and taking no part in the decision, was drawn up by

WHITMAN C. J. This action being for money had and received, the plaintiffs have a right to recover of the inhabitants of the district whatever money they may have in their hands, if any there be, derived from the plaintiffs or received for them, which in equity and good conscience they ought not to detain from them. This species of action has ever been regarded as purely of an equitable nature. *Moses* v. *Macferlan*, 2 Bur. 1005.

It does not seem that the plaintiffs complain, or have any reason for so doing, that they have been compelled to pay an unreasonable proportion of the expenses of building a school house, in the district in which they reside ; and the building of which, by reason of the destruction of the only one the district before had, had become indispensable. It is not pretended they were not liable to be taxed for such purpose : but the contention is, that due proceedings had not been adopted there-

for ; — nor is it pretended, that they had been assessed for any estate they did not own.   In fact there does not seem to have been the slightest ground for believing that there was, in any respect, in connection with the building of the house, or in the assessment of the tax in question, the least deviation from what was supposed to be an imperative duty.   The plaintiffs seem to be endeavoring to escape from their liability upon grounds purely technical ; but, nevertheless, if such are actually to be found in the case, in reference to particulars preliminarily required to render the imposition of a tax valid, they must be allowed to avail the plaintiffs in their endeavors to avoid being responsible for their just proportion of the burthen of building a school house for the accommodation of themselves, as well as the rest of their fellow citizens of the district.

We will now proceed to consider the objections in the order in which they have been urged upon our consideration. The first is, to the proceedings of the defendants, in which it is insisted that there was no legal evidence adduced at the trial, that any written application of any three or more of the legal voters of the district was made to the selectmen to call the meeting, to consider of the subject of building a school house, and the raising of the money to defray the expense of it.   It is, however, agreed to be admitted, that the selectmen were furnished with such an application, if it be admissible to prove it without producing the application, or a record of it; and that they thereupon issued their warrant for the calling of the meeting, but without reciting such application or alluding to it.   The statute concerning school district meetings does not prescribe, that the selectmen should make any such recital, or that they should return such written request to the clerk of the district or to any other place.   It was a document addressed to them, and which they might keep on their files ; and it would seem to be proper that they should there preserve it ; and there would seem to be a propriety in their reciting it in their warrant, by way of making an exhibit of their authority for issuing their warrant ; but we cannot say that it would be

indispensable to its validity, that they should do so, as the statute does not expressly require it.

This matter was alluded to in *Williams* v. *The School Dis. in L.* 21 Pick. 75, without any express decision concerning it. But the Chief Justice, in noticing it, would seem not to have been much impressed with the necessity of such a course on the part of the selectmen. He notices that, though it did not appear by the warrant, that such application had been made, yet that it appeared *aliunde* that such application had been made, without intimating any doubt of the admissibility and sufficiency of such proof. In *Fletcher* v. *Lincolnville,* 20 Maine R. 439, it was objected, that it did not appear that the applicants for the school district meeting were legal voters, residing within the district; but the Court observed, " if that fact is not to be presumed from the official action of the selectmen, which followed, it is established by the agreement of the parties; and if the fact existed the warrant is justified." If, then, the fact existed, also, that a written application was made to the selectmen, it would seem to follow, by parity of reasoning, that their warrant, thereupon issued, would be justified. Selectmen are officers of a highly responsible character. It is made their duty upon such applications alone to issue their warrants for the calling of school district meetings. When therefore they issue their warrants for such meetings, specifying the purposes therefor, there would seem to be the highest degree of propriety in presuming, that they had proceeded upon due application therefor. Selectmen are authorized to call town meetings, on the application of ten or more of the qualified voters in writing, for any special purpose, but it is believed not to be usual in calling any such meeting to state any thing more than the purposes for which it may be called. There can scarcely be a doubt that meetings so called would be held to be legal.

The next objection is, that the return of the officer, on the warrant for calling the meeting, did not expressly state, that the places at which notices were posted were public places, one of them being the school house in the district; the statute

requiring that the notices should be published in two or more public places in the district, one being on their school house, if any there be. But the case shows that the school house in this district had been consumed by fire ; and the return states, that the notices were posted at four different places in the district, one being at a meeting house, one at the post-office, one at the sign post, (meaning doubtless at the guide post,) where two public roads formed a corner, and one at a blacksmith's shop, all well known to be public places in a country neighborhood, to which the people are accustomed to resort. The decision in *Fletcher* v. *Lincolnville* shows, that under such circumstances, this objection is not well founded.

We come now to the objection principally relied upon by the plaintiff: and it is, that there was no proper vote authorizing the raising of the money by assessment, necessary to defray the expense of erecting the school house. All the votes of the district were passed at one and the same meeting, though partly at the adjournments thereof. On the tenth day of May, 1845, when the meeting commenced, it was voted, that a sufficient sum should be raised " to defray all the expenses incident to the building of said house." The adjournments were from time to time till the 8th December of the same year, at which time the house had been built and finished, as reported by the building committee, with the amount of the charges therefor, which report being accepted, and the amount necessary to defray the expenses of building the house, the clerk of the district, thereupon, made his certificate to the assessors of the town, that, at said meeting, it was voted to raise the sum necessary to defray the building of the house, the precise amount of which was $213,38. These proceedings, taken together, were perfectly intelligible, though perhaps not in the most appropriate form. There was a vote to raise the requisite amount, and that amount was precisely ascertained, and when ascertained by the actual expenditure for the purpose, instead of a conjectural estimate, it might well be considered as being voted to be raised.

In the proceedings of our numerous and various municipal

corporations we ought not to look for a scrupulous observance of the most approved formalities. If their proceedings are in substance what they should be, and intelligible, it would be mischievous to set them aside for the want of technical formality. The intention of the voters of the district is perfectly apparent in the case before us, and the certificate of their clerk was in conformity thereto; and on the whole we do not perceive, but in equity and good conscience, the defendants should be allowed to retain the amount obtained from the plaintiffs.

*Plaintiffs nonsuit.*